IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2015 Session

## JAMIE GRIMES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007-B-968    Monte D. Watkins, Judge**

_____

**No. M2014-01533-CCA-R3-PC – Filed August 18, 2015**

_____

The Petitioner, Jamie Grimes, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2009 convictions for possession of more than 300 grams of cocaine with the intent to sell, possession of marijuana, and possession of drug paraphernalia and his effective thirty-year sentence. He contends that his constitutional rights to due process and the effective assistance of counsel were violated. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jennifer J. Hall, Nashville, Tennessee, for the appellant, Jamie Grimes.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Victor S. (Torry) Johnson III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the Petitioner's 2009 convictions for several drug-related offenses. The Petitioner appealed the convictions, and this court affirmed the convictions. *See State v. Bobby Lee Robinson and Jamie Nathaniel Grimes*, No. M2009-02450-CCA-R3-CD, 2011 WL 6747480 (Tenn. Crim. App. Dec. 22, 2011). Mr. Robinson appealed his convictions to the Tennessee Supreme Court, which granted relief. *State v. Robinson*, 400 S.W.3d 529 (Tenn. 2013). The Petitioner was granted a delayed opportunity to apply for permission to appeal to the supreme court, but his application was denied on February 12, 2014.

This court's recitation of the facts in the previous opinion shows that on December 8, 2006, a Metropolitan Nashville police officer worked with a confidential informant (CI) to arrange for the CI to purchase four ounces of crack cocaine and two ounces of powder cocaine from the Petitioner. The officer instructed the CI to call the Petitioner. During the recorded phone conversation, the Petitioner told the CI to meet him at Back Yard Burgers in Donelson. The officer also heard information that confirmed the Petitioner's location. Another officer went to the house where the Petitioner was located and conducted surveillance on a black pickup truck. The officer saw the Petitioner and two others leave the house in the black pickup truck but did not observe them carry anything to the truck.

Once at Back Yard Burgers, the Petitioner drove the truck around the restaurant twice. As the officers tried to stop the truck, the Petitioner attempted to escape and struck another car in the parking lot. Ultimately, the Petitioner and his companions were detained and searched. A cell phone was found on the Petitioner.

The Petitioner's truck and the house were also searched. In the truck, officers found three cell phones, approximately 160 grams of cocaine in the floor near the Petitioner's feet, and 8.6 grams of marijuana. In the house, officers found a credit application, tax forms, the Petitioner's checking account information, clothes that would fit the Petitioner, more than 11 grams of powder cocaine and another 282 grams of cocaine base, $1000, digital scales, measuring cups, a pan with white residue, baking soda, a black pan, a plastic cup, a knife and bags with white residue, and a box of rubber gloves. Some of these items appeared to have been used to cook crack cocaine. The Petitioner was indicted and convicted of possession of more than 300 grams of cocaine with the intent to sell, possession of marijuana, and possession of drug paraphernalia. *Bobby Lee Robinson and Jamie Nathaniel Grimes*, 2011 WL 6747480, at *1-9.

On December 21, 2012, the Petitioner filed a pro se petition for post-conviction relief alleging a deprivation of due process based on various grounds, including the ineffective assistance of counsel. In the Petitioner's amended petition, he requested a delayed appeal to the Tennessee Supreme Court pursuant to Tennessee Appellate Procedure Rule 11. Finding that the Petitioner was denied supreme court review through no fault of the Petitioner, the post-conviction court stayed the post-conviction proceedings to allow him to file an application for permission to appeal to the supreme court. The Petitioner's application was denied. On April 10, 2014, an amendment to the amended petition was filed.

At the post-conviction hearing, the Petitioner's trial counsel testified that the Petitioner's mother retained him to represent her son in five or six matters. Counsel did not hire an investigator in this case because he did not believe one was necessary. He conducted research and reviewed the discovery but did not know how many hours he

spent. He did not have his case file at the post-conviction hearing and did not know if he spoke to the Petitioner about severance. Counsel said he did not know why he raised an untimely entrapment defense during the trial and acknowledged an entrapment defense must be raised before trial.

Counsel testified that he discussed the strength of the State's case with the Petitioner, provided the discovery to the Petitioner, and reviewed the discovery with the Petitioner. Although counsel did not remember specifically what he spoke about with the Petitioner, counsel said he would have reviewed the indictments with him. Counsel and the Petitioner discussed the different plea offers, the potentially high exposure in the case, and the amount of drugs involved. Counsel discussed plea negotiations with the Petitioner multiple times "back in [c]ourt holding[.]" When counsel recommended that the Petitioner accept an offer, the Petitioner replied that the State "would have to show [him] what they [had]."

Counsel testified that he spoke to the Petitioner about the felony classification, range of punishment, and percentage of service, "especially . . . as it relate[d] to different plea offers, versus taking the plea and not taking the plea[.]" Counsel said, "[W]e discussed taking the plea in such a way that he wouldn't end up being exposed to quite so much time, as opposed to a twenty-five or a thirty-year sentence." Counsel did not remember if the Petitioner asked him whether the charge was for a Class A or a Class B felony.

Counsel testified that he spoke with the Petitioner about additional charges that had been brought by the State near the time the trial court was considering a bond reduction. Counsel was "livid" about the additional charges. A couple of motions regarding joinder were filed in one of the additional cases, but they were denied.

Counsel testified that his defense was focused on the approach used by the State's expert in analyzing and reporting the weight of the contraband. The expert analyzed a small amount of the cocaine but then reported a finding that was in excess of 300 grams of cocaine. Counsel argued the amount was arbitrary and unrepresentative of the entire amount of substances submitted for analysis. He also argued that the Petitioner's name was not on the lease of the house where the Petitioner was arrested and that the Petitioner was a transient at that time.

Counsel testified that he did not remember discussing the analysis issue with the Petitioner. Counsel also did not remember specifically researching this topic but was sure he had researched the "representative amount, with a view to it not being significant enough to confer it upon the entire amount." He did not remember researching whether "that's the way that things are normally weighed and [whether] that's okay for TBI to do it that way[.]"

-3-

Counsel testified that he did not remember how many hours he discussed trial strategy with the Petitioner. Counsel also did not recall how many times he communicated with the Petitioner in person and by letter. Counsel communicated with the Petitioner through the Petitioner's mother when counsel and the Petitioner were unable to speak directly. Counsel did not remember any confusion about relayed messages. Counsel also did not recall any conversation in which he explained the concept of mitigation to the Petitioner, but counsel did tell the Petitioner that a presentence report preparer would speak to him.

Counsel testified that the reason the Petitioner's motions for a new trial contained seventeen issues while only three were raised on appeal was that counsel focused on the issues he thought were most "telling" and pivotal. He was particularly interested in the random manner of the drug sampling process. Counsel chose the three appellate issues because they dealt with the amount of drugs. Counsel did not recall how many hours he spent researching and drafting the Petitioner's appellate brief.

Counsel testified that he did not remember how the Petitioner learned the Tennessee Court of Criminal Appeals had affirmed the Petitioner's convictions and sentences. Counsel discussed an application for permission to appeal to the Tennessee Supreme Court with the Petitioner and the Petitioner's mother. Counsel told the Petitioner's mother that he did not plan to take the case to the supreme court and explained that he was handling a number of other matters for the Petitioner and the Petitioner's mother, that some payment issues existed, and that he did not plan on remaining "for that third level." Counsel acknowledged that the Petitioner and the Petitioner's mother wanted him to appeal to the supreme court. When asked whether he returned post-conviction counsel's telephone calls, counsel said he left her voicemail messages.

On cross-examination, counsel testified that the State filed at least three or four additional charges against the Petitioner. Counsel thought an enhanced punishment notice was filed in each case. The enhanced punishment notice filed in this case was received as an exhibit. Counsel said he attempted to negotiate "a global settlement" of all cases. His goal in this case was to reduce the cocaine amount from more than 300 grams, a Class A felony carrying twenty-five to forty years' incarceration, to less than 300 grams, a Class B felony carrying twelve to twenty years' incarceration. He agreed he "follow[ed] that through" to the best of his abilities at all stages of the case.

Counsel testified that he had a good attorney-client relationship with the Petitioner and that he responded to the Petitioner's and his mother's communication requests. Counsel agreed that he knew the facts of the case and that no surprises occurred during the trial. He chose the appellate issues he thought were best in order to have the offense reduced to a Class B felony.

Counsel testified that during his twenty years of law practice, more than 50% of his practice was criminal defense and that most of the cases he handled were drug cases. Counsel said he represented the Petitioner to the best of his abilities and with his best judgment.

The Petitioner's mother testified that counsel was paid $20,000 to $22,000 for his work on the case and that she did not owe him any money. She said counsel knew she envisioned taking the case "all the way" to the Tennessee Supreme Court. She later learned the Petitioner's codefendant at trial had filed an application for permission to appeal. When the Petitioner's mother asked counsel whether he would file an application for the Petitioner, he replied that it was too late and that his focus was on "this school zone." When the Petitioner's mother asked if counsel was "going to do anything," counsel did not answer.

The Petitioner's mother testified that she had a few discussions with counsel and that she assumed some confusion existed through her role as a messenger. She said the reason she did not terminate counsel's representation was that she was unfamiliar with other Nashville attorneys and thought counsel "would do the right thing[.]"

The Petitioner testified that he met with counsel several times before the trial. Two of the meetings occurred at "CCA, Metro" while the rest occurred in court. Although the Petitioner received the discovery, he said counsel did not explain the nature of the charges, did not review the discovery, and did not answer any of his questions about the discovery. The Petitioner thought that he was charged with a Class B felony and that counsel agreed the offense was a Class B felony. Counsel did not tell the Petitioner he was charged with a Class A felony.

The Petitioner testified that counsel visited him to discuss a plea offer they might propose to the State but that counsel never discussed with him the theory of the case, the discovery, or the motions that could be filed. When the Petitioner asked counsel what the State possessed, counsel replied, "The drugs." The Petitioner did not think he had enough information to make an informed decision as to whether to propose or accept any offer or proceed to trial. If the Petitioner had known he was charged with a Class A felony, he would have accepted an offer and not proceeded to trial. The Petitioner said he "never [had] a proper plea offer" but "would have took an offer."

The Petitioner testified that he did not recall counsel's discussing any appellate issues with him and that he learned this court had affirmed his convictions and sentences when he received the opinion. When the Petitioner asked counsel about filing an application to appeal to the supreme court, counsel said they needed to focus on the school zone issue instead. The Petitioner wanted counsel to file an application.

The Petitioner testified that counsel did not ask him about mitigating evidence. At one point, the Petitioner became uncomfortable with counsel because of their lack of communication.

On cross-examination, the Petitioner testified that he knew the facts of the case and that he had no questions about them. On redirect examination, the Petitioner testified that counsel did not discuss enhancement factors with him and that counsel did not provide him a copy of the presentence report.

The post-conviction court denied relief. The court noted counsel testified that he met with the Petitioner several times and that the Petitioner was advised of the evidence, the likelihood of conviction, and the range of punishment. The court noted counsel filed several motions, including motions to compel, to suppress, to disclose the identity of the confidential informant, in limine, and for a new trial. The court noted counsel said the issues raised in the Petitioner's motion for a new trial and on appeal were those he deemed necessary and appropriate. The court did not find the Petitioner's testimony credible, and it found that the Petitioner failed to demonstrate his claim by clear and convincing evidence. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

# I

## Violations of Due Process

The Petitioner contends that his constitutional rights to due process and a fair trial were violated in two different respects: (1) the "notice of enhanced sentencing" was insufficient, and (2) counsel failed to cooperate with post-conviction counsel in the post-conviction proceedings.

## A. Insufficient Notice

The Petitioner contends that the enhanced sentencing notice violated his right to due process because it was insufficient under Tennessee Code Annotated section 40-35-

202(a). The State argues that this claim is not a cognizable ground for post-conviction relief but that even if it were, the notice was adequate. We conclude that the Petitioner has waived this issue.

> Under Tennessee Code Annotated section 40-30-106(g) (2012),
>
> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless: (1) The claim for relief is based on a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

T.C.A. § 40-30-106(g). The record reflects that the Petitioner did not, through his counsel or by himself, raise this issue in his original or amended motion for a new trial or on appeal, and no evidence shows an exception to the waiver rule applies. *See Bobby Lee Robinson and Jamie Nathaniel Grimes*, 2011 WL 6747480, at *13-15. The Petitioner is not entitled to relief on this basis.

## B. Lack of a Meaningful Hearing

The Petitioner contends that his right to due process was violated because counsel refused to meet and communicate with post-conviction counsel during the post-conviction proceedings. The Petitioner argues this refusal denied him "a meaningful evidentiary hearing, as evidenced by . . . counsel's repeated inability to remember the details" of his case. The State argues the Petitioner received a meaningful hearing. We conclude that no due process violation occurred.

"All that due process requires in the post-conviction setting is that the defendant have the opportunity to be heard at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (internal quotation marks and citation omitted).

The record reflects that the Petitioner and counsel testified at the post-conviction hearing. Although counsel recurrently testified that he did not remember certain details of his representation, the trial occurred nearly five years before the hearing, and counsel did not have his case file with him. When post-conviction counsel asked counsel whether he returned her phone calls, counsel said he left her voicemail messages, and the post-conviction court did not discredit his testimony. Counsel was not required to discuss his testimony with post-conviction counsel before the hearing. Because the Petitioner was

not denied the opportunity to be heard in a meaningful manner, he has not established his right to due process was violated. He is not entitled to relief on this basis.

## II

### Ineffective Assistance of Counsel

The Petitioner contends that he received ineffective assistance because counsel failed to file an application for permission to appeal to the Tennessee Supreme Court, failed to challenge the notice of enhanced sentencing, failed to make informed choices and adequately prepare for the theory of the case, failed to file a timely notice of an affirmative defense, failed to communicate with him and to inform him before the trial of the nature and possible sentences for the charges, and failed to raise the issue of joinder on appeal. The Petitioner also contends that counsel's deficiencies resulted in substantial separate and cumulative prejudice. The State argues that several of the grounds for relief have been previously determined and that the others lack merit because the Petitioner has not proven them by clear and convincing evidence.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Regarding counsel's failure to file an application for permission to appeal, the Petitioner has already been granted relief. The Petitioner was granted a stay of his post-conviction proceedings to allow him to file an application for permission to appeal to the Tennessee Supreme Court and was appointed counsel for that purpose. The Petitioner filed an application, but it was denied by the supreme court. No other relief on this issue is available to the Petitioner. Thus, the Petitioner was not prejudiced by counsel's failure to file a timely application.

Regarding counsel's failure to challenge the enhanced sentencing notice, the Petitioner cannot prevail because the notice was sufficient. Under Tennessee Code Annotated section 40-35-202(a) (2014), the State must file a statement with the court and defense counsel at least ten days before the trial, unless the statement is waived by a defendant. The statement must include the following information: (1) the nature of the defendant's previous felony convictions, (2) the conviction dates, and (3) the identity of the convicting courts. T.C.A. § 40-35-202(a); *see State v. Livingston*, 197 S.W.3d 710, 713-14 (Tenn. 2006) (footnote omitted) (stating that at a minimum, "the notice provision" of Code section 40-35-202(a) "requires . . . that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions").

In analyzing whether the State satisfied the statutory requirements, the Petitioner focuses on the State's discovery response. The State, however, filed a separate document titled "Notice of Enhanced Punishment" two years before the trial. The notice listed the case numbers, offense names, dates, and courts for four of the Petitioner's convictions. *See Livingston*, 197 S.W.3d at 711. The notice was sufficient, and counsel was not deficient for failing to challenge the State's enhanced sentencing notice. The Petitioner is not entitled to relief on this basis.

Regarding counsel's preparing a defense theory for the case, counsel testified that he focused on the drug weighing process used by the State's expert and the fact that the Petitioner's name was not on the lease of the house at issue. Counsel argued at the trial and on appeal that the sample size taken by the expert was arbitrary and unrepresentative of the entire amount of drugs because it was particularly small. Counsel's goal was to reduce the weight of the drugs involved in the case so that the offense would be a Class B felony rather than a Class A felony. Although counsel could not remember how many hours he spent investigating and researching the case, he conducted research, reviewed the discovery, and knew he specifically researched the "representative amount" in a manner that would support his position. The post-conviction court did not discredit counsel's testimony. Based on this evidence, we cannot conclude that counsel's level of

preparation was unreasonable. Although counsel's trial strategy was ultimately unsuccessful on appeal, a petitioner cannot prevail merely because a sound tactic proved unsuccessful. *Adkins*, 911 S.W.2d at 347; *see Pylant*, 263 S.W.3d at 874.

Additionally, the Petitioner has not shown prejudice. He argues counsel's focusing on "clearly invalid legal arguments at the expense of other legitimately arguable, fundamental issues prejudiced [him] because a more adequately researched and prepared trial strategy would likely have resulted in a drastically different outcome." The Petitioner has not articulated any alternative theories that could have been more successful, and we note the overwhelming evidence supporting his convictions. He is not entitled to relief on this basis.

Regarding counsel's failure to file a timely notice of an entrapment defense, we note that entrapment is a general defense. *State v. Shropshire*, 874 S.W.2d 634, 638 (Tenn. Crim. App. 1993). To raise an entrapment defense, a defendant must give the State appropriate pretrial notice or notice as the court directs. T.C.A. § 39-11-505 (2014). The record reflects that counsel attempted to raise an entrapment defense during the trial.

Even assuming counsel's timing was deficient, the Petitioner has not shown prejudice. The issue of predisposition was not raised during the post-conviction hearing, and the Petitioner failed to present proof at the hearing to show that entrapment would have been a viable defense. The Petitioner is not entitled to relief on this basis.

Regarding counsel's communication with the Petitioner, the record reflects that the post-conviction court did not discredit counsel's testimony. With respect to counsel and the Petitioner's discussions about the nature and possible sentences for the charges, counsel spoke with the Petitioner about the felony classification, range of punishment, and percentage of service with relation to the different plea offers and the ramifications of accepting or rejecting any plea offer. Counsel and the Petitioner also discussed the Petitioner's accepting an offer in order to lower the Petitioner's potential sentencing.

The Petitioner testified that counsel agreed with him that he was charged with a Class B felony. The Petitioner said that had he known he was charged with a Class A felony, he would have accepted a plea offer and not proceeded to trial. The post-conviction court, however, discredited the Petitioner's testimony. *See Henley*, 960 S.W.2d at 578 (stating a post-conviction court's factual findings are conclusive on appeal, unless the evidence preponderates against them). The Petitioner has failed to show prejudice and is not entitled to relief on this basis.

With respect to counsel's discussions with the Petitioner on other matters related to the case, counsel testified that although he did not recall how many times he communicated with the Petitioner, he reviewed the discovery and the indictments with

-10-

the Petitioner as well as discussed the lengthy sentencing the Petitioner faced and the amount of drugs involved. Counsel and the Petitioner also discussed the strength of the State's case in relation to the amount of cocaine involved. If counsel and the Petitioner were unable to speak directly, counsel communicated with him through his mother, and counsel responded to the Petitioner and the Petitioner's mother's requests. The Petitioner's mother, whose testimony was not discredited by the post-conviction court, testified that she had a few discussions with counsel and that she acted as a messenger between him and the Petitioner. Although counsel could not remember the details of every conversation he had with the Petitioner, his testimony shows that he reviewed essential information with the Petitioner, including the indictments, the discovery, the plea offers, and the amount of drugs involved. The Petitioner has failed to show deficient performance.

Additionally, the Petitioner has not shown prejudice. He testified that he and counsel did not discuss the theory of the case, the evidence possessed by the State, or the motions that could be filed. The Petitioner did not think he could make an informed decision as to whether to accept a plea offer or proceed to trial. The post-conviction court, however, discredited the Petitioner's testimony, and the Petitioner has not articulated any other prejudice from counsel's level of communication with him. The Petitioner is not entitled to relief on this basis.

In his sixth ineffective assistance of counsel issue, the Petitioner specifically argues the issue of joinder should have been raised on appeal. Counsel's failure to argue the issue of joinder on appeal, however, was not raised in the Petitioner's original or amended petition for post-conviction relief. *See Dedrick Lamont Patton v. State*, No. M2009-01472-CCA-R3-PC, 2010 WL 1425569, at *6 (Tenn. Crim. App. Apr. 9, 2010) (citing *State v. Maddin*, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) ("When an issue is raised for the first time on appeal, it is typically waived.")). This issue is waived, and the Petitioner is not entitled to relief on this basis.

Regarding the Petitioner's argument that the Petitioner was prejudiced on account of the cumulative effect of counsel's actions, we are unpersuaded for the reasons we have stated. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE